IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| ELIZABETH LAREAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 1:19-cv-0935-AJT-MSN |
| | ) | |
| OSETH GROUP, LCC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT & RECOMMENDATION

This matter comes before the Court on plaintiff Elizabeth Lareau's motion for default judgment (Dkt. No. 11). Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends entering default judgment in plaintiff's favor for the reasons that follow.

### I.    Procedural Background

On July 18, 2019, plaintiff brought an action against defendant for violations of the Civil Rights Act of 1964, breach of contract, and unjust enrichment. (Dkt. No. 1). On July 18, 2020, a summons was issued to the defendant, Oseth Group, LLC. (Dkt. No. 3). The summons and complaint were served upon defendant on October 16, 2019, and an affidavit of service was filed on October 24, 2019. (Dkt. No. 5). Defendant failed to timely respond, and plaintiff filed a request for entry of default on November 8, 2019. (Dkt. No. 6). On November 13, 2019, the Clerk of the Court entered default. (Dkt. No. 10).

On December 20, 2019, plaintiff filed a motion for default judgment, along with a memorandum in support. (Dkt. Nos. 11 and 12). On January 17, 2020, a hearing was held on the motion for default judgment, at which no representative for the defendant appeared. (Dkt. No. 14). At the hearing, plaintiff's counsel asked for the opportunity to brief the issue of back pay under

Title VII of the Civil Rights Act. (Dkt. No. 15). Accordingly, the Court directed plaintiff's counsel submit supplemental briefing on the back-pay issue by February 21, 2020 (Dkt. No. 18). Accordingly, the matter is now ripe for disposition.

Plaintiff's complaint alleges five counts against defendant. (Dkt. No. 1) ¶ 1. Plaintiff alleges a hostile work environment in violation of Title VII (Count I), discharge because of gender in violation of Title VII (Count II), retaliation under Title VII (Count III), common law breach of contract (Count IV), and unjust enrichment (Count V).[1]

## II.    Factual Background

The following facts are established by plaintiff's complaint (Dkt. No. 1) as well as by her memorandum in support of the motion for default judgment. (Dkt. No. 12).

Plaintiff Elizabeth Lareau is a resident of Virginia, who was an employee of defendant Oseth Group, LLC from December 27, 2016 to March 29, 2018. (Dkt. No. 1) ¶ 17. Defendant Oseth Group, LLC is a Virginia corporation which maintains its principal offices in the state and appears to be in good standing. *Id*. at ¶ 3. Defendant is a construction company. *Id.*

Plaintiff's role in the company was Project Manager in the Commercial Construction division. Her immediate supervisor was Daniel Oseth, the Owner and President of Oseth. *Id*. at ¶ 15. Throughout her employment, Mr. Oseth treated plaintiff differently based on her gender. This included sexual harassment. *Id*. at ¶ 17.

Mr. Oseth forced plaintiff into situations where she would be alone with him, such as car travel, networking events, and meals. *Id*. at ¶ 18. Plaintiff repeatedly turned down Mr. Oseth's sexual advances. *Id*. at ¶ 20. Mr. Oseth frequently commented on plaintiff's appearance and physique. *Id.* at ¶ 21. He made comments about plaintiff's personal relationships, such as stating that plaintiff "only dates older men, though I can't imagine how that satisfies her," and that "people

---

[1] Plaintiff is not pursuing her unjust enrichment claim in the motion for default judgment.

2

think she's with [her partner] for his money, but my bet is that it's a fetish thing." *Id*. at ¶ 22. Mr. Oseth suggested to plaintiff that she spent time in her private office masturbating. *Id.* at ¶ 26. In spring of 2017, Mr. Oseth suggested to plaintiff that her success in previous roles had stemmed from her "willingness to provide blowjobs." *Id*. at ¶ 29.

Plaintiff continually turned down Mr. Oseth's sexual advances. When other people were present, and Mr. Oseth made sexual comments, plaintiff would typically make a direct statement asking him to stop. *Id*. at ¶ 30. Plaintiff brought up her frustrations with others in the company. *Id*.

During plaintiff's interview before her hire, she was asked whether she had any children or other dependents who would prevent her from working late. Before she could answer, she was told that there were many events occurring outside regular business hours that she would be required  to attend, and that this was a condition of her employment. *Id*. at ¶ 31. During the first few months of her employment, she was asked by Mr. Oseth if she wanted children, noting "you are 34 now, so…" *Id.* at 32. Plaintiff reminded Mr. Oseth that she had been asked that question in her interview, which she found offensive. *Id.* Mr. Oseth responded, "oh yeah, that's illegal, isn't it?" *Id*. After this conversation, Mr. Oseth would repeatedly refer to plaintiff as "kid-hater." *Id*.

Plaintiff also states she was not promoted due to her gender. A male employee was promoted to Accounts Manager/Senior Project Manager after six months of employment with defendant, despite having no experience in the construction industry or as a project manager. Plaintiff had more experience than this employee, and a stronger job performance. *Id*. at 34. Plaintiff was never promoted beyond project manager. *Id*. at 36.

The incident that seemingly precipitated plaintiff's termination began on March 28, 2018. On that date, plaintiff was notified by a site supervisor that construction crew members were refusing to comply with that supervisor's instructions. *Id*. at 37. Plaintiff eventually went to the work site to ensure that the supervisor's instructions were carried out. *Id*. at ¶ 40. The following

day, Mr. Oseth told plaintiff to meet with him to discuss the previous day's events. On her way to the meeting, plaintiff noticed that her email and company credit card had been cut off. Plaintiff was then terminated. *Id.* ¶ at 43. The stated reason for the termination was plaintiff's decision to go to the work site the day before, but plaintiff states the firing was actually the culmination of the sexually hostile work environment. *Id.*

### III.    Jurisdiction, Venue, and Service of Process

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, since this case includes claims that arises under federal law. This Court has supplemental jurisdiction over the common law breach of contract claim because it is a related state law claim under 28 U.S.C. § 1367. Since the employment practices committed by defendant occurred within the jurisdiction of the Court, and plaintiff would still be employed within the jurisdiction of the Court but for the unlawful employment practices committed by defendant, venue lies in this Court pursuant to 28 U.S.C. § 139.

### IV.    Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be

entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because defendants have not answered or otherwise timely responded, the well-pleaded allegations of fact contained in the complaint are deemed to be admitted.

## V.    Analysis

Having examined the record, the undersigned finds that the well-pleaded allegations of fact in the complaint (Dkt. No. 1), supported by plaintiff's motion for default judgment (Dkt. No. 11) and memorandum in support (Dkt. No. 12), establish that defendant violated Title VII of the Civil Rights Act and breached its contract with plaintiff.

### a.   Hostile Work Environment

Plaintiff has properly alleged all the elements of her claim for a Title VII hostile work environment. The elements of a hostile work environment claim are that "(1) she experienced unwelcome harassment; (2) the harassment was based on her gender or race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Evans v. International Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019).

On the first element, plaintiff has provided copious evidence of unwelcome harassment. As detailed above, plaintiff's supervisor made many inappropriate sexual comments, forced plaintiff into situations where she was alone with him, repeatedly turned down his sexual advances, and frequently shared too much information about his personal life. On the second element, this harassment was clearly based on plaintiff's gender. The comments alleged are almost entirely sexual in nature, or are specifically related to plaintiff's gender, such as her desire to have children. (Dkt. No. 1) at ¶ 31.

As to the third element, this harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. "When determining whether the harassing conduct was objectively severe or pervasive, we must look at all the circumstances; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Evans*, 936 F.3d at 192

Regarding pervasiveness, Mr. Oseth's unwelcomed sexual conduct that was directed squarely at Ms. Lareau's gender was "repeated," "frequent," and occurred on "many occasions" "throughout her employment." Regarding severity the harassment included repeated sexual comments, repeated sexual advances, repeated comments about physical appearance, describing his fantasy of her giving him oral sex, suggesting she obtained prior employment because she provided oral sex, "making lewd comments about sex acts and other women's bodies to her, suggesting she was masturbating at work, [and] suggesting she had sexual fetishes." (Dkt. No. 12) 8.

Finally, on the issue of liability, there is a basis to impose liability on the employer. Mr. Oseth was both the owner and president of defendant, as well as plaintiff's supervisor. (Dkt. No. 1) at ¶ 15. Title VII liability attaches to an employer when "the harassing individual is sufficiently high-ranking to be deemed the employer's 'proxy.'" *Dao v. Faustin*, 2019 U.S. Dist. LEXIS 148645 (E.D. Va. Aug. 29, 2019). "A president, owner, proprietor, partner, corporate office and certain high-level supervisors are treated as the employer's 'proxy" *Id*. at *39. Here, the harasser is simultaneously the owner, president, and supervisor. Therefore, there is more than adequate basis to impose liability on the employer. Accordingly, the undersigned recommends entering default judgment for plaintiff on her hostile work environment claim.

### b. Discharge Based on Gender

Plaintiff's second claim is that she was improperly discharged from employment because of her gender. Title VII prohibits discharge from employment due to gender. 42 U.S.C.A. § 2000e-

2(a)(1). This claim is also properly alleged. Under the *Price Waterhouse* framework, direct evidence of discrimination satisfies a plaintiff's burden of proof. "Such a showing entitles the factfinder to presume that the employer's discriminatory animus made a difference in the outcome, and… to conclude that the employer's decision was made "because of" consideration of the illegitimate factor. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 230 (1989). Here, plaintiff has shown ample direct evidence of this discriminatory animus, as is made clear through the litany of evidence presented above.  Plaintiff has plausibly plead that it was because of her repeated rejection of her supervisor's advances, and because she expressed opposition to the sexualized hostile work environment, that she was terminated. (Dkt. No. 1) at ¶ 54. Therefore, the undersigned recommends entering default judgment for plaintiff on her discharge based on gender claim.

### c. Unlawful Retaliation

Plaintiff has properly alleged a claim for unlawful retaliation under Title VII.  Plaintiff's complaint is replete with examples of unlawful conduct. Plaintiff made her opposition to such conduct clear to her supervisor and others in the company, and she was terminated as a direct consequence of her opposition to such conduct. (Dkt. No. 1) at ¶ 20 ("Ms. Lareau repeatedly turned down Mr. Oseth's sexual advances"); ¶ 30 ("Ms. Lareau kept turning down Mr. Oseth's sexual advances, but he nevertheless continued sexually harassing her"); ¶ 30 (Ms. Lareau stated to Mr. Oseth, "Dan, please stop"); ¶ 43 ("Ms. Lareau was fired as the culmination of the sexually hostile work environment"). Therefore, plaintiff has adequately pleaded that she engaged in protected conduct, suffered an action in response to that conduct, and that a direct link exists between her conduct and the adverse action. Consequently, default judgment for plaintiff with respect to her unlawful retaliation claim is proper.

### d. Breach of Contract

Plaintiff has properly alleged a claim for common law breach of contract. First, plaintiff has alleged that she has a contract. The complaint details that in October of 2017, plaintiff and defendant negotiated the terms of her compensation. (Dkt. No. 1) at ¶ 48. Mr. Oseth made an offer, which plaintiff countered by asking for a base pay of $85,000 plus 5% commission points on all of defendant's projects on which she served as Project Manager. Defendant orally agreed to these terms. *Id*. Later, these terms were confirmed in written communication. *Id*. at ¶ 71.

Second, defendant subsequently breached this contract. Plaintiff never received any commission points for any project subsequent to reaching this agreement. *Id*. at ¶ 72. By not providing these commission points, plaintiff is in breach of its contract with plaintiff. Accordingly, the undersigned recommends entering default judgment for plaintiff on her breach of contract claim.

### e. Damages

Plaintiff's request for damages can be divided into two parts. First, plaintiff requests a back-pay award under Title VII. The undersigned will address that issue below. Second, plaintiff requests compensatory and punitive damages under Title VII and compensatory damages for the breach of contract claim. The plaintiff has requested a jury trial on those issues. Therefore, the undersigned makes no recommendation as to the appropriate amount of compensatory and punitive damages.

Plaintiff has requested a back-pay award under Title VII of $106,199.46. First, plaintiff is entitled to recover back-pay. *Mohammed v. Cent. Driving Mini Storage, Inc.*, 128 F. Supp. 3d 932, 947 (E.D. Va. 2015) ("Title VII plaintiff is generally entitled to back pay 'as a matter of course'"). *Depaoli v. Vacation Sales Assocs., LLC*, 2006 U.S. Dist. LEXIS 22928, at *22 (E.D. Va. April 25, 2006) ("It is well established that back-pay is awarded to successful Title VII plaintiffs"). Plaintiff's affidavit provides detailed support for this request.  Plaintiff's employment terminated on March 29, 2019. Therefore, the back pay period as calculated runs from March 30, 3029, through February 21,

2020, the date the supplemental motion was filed. (Dkt. No. 18) 3. Plaintiff's pay was $1,634.61 on a weekly basis. Therefore, for this 91 week period, plaintiff's loss of income was $161,826.39. However, plaintiff mitigated her damages by securing other employment. She earned $62,732 from her new job, which, subtracted from her loss of income, yields a figure of $99,094.39.

However, plaintiff also requests interest on this sum as part of her relief. "Title VII authorizes prejudgment interest as part of the back-pay remedy in suits against private employers." *Mohammed*, 128 F. Supp. 3d at 948-49. The plaintiff correctly notes that this Court has adopted the pre-judgment interest formula stated in *Ford v. Rigidply Rafters, Inc.*, 984 F. Supp. 386 (D. Md. 1997). Under this formula, the Court will add interest to the $99,094.39 figure based on the inflation rate for the relevant time period. *Ford*, 984 F. Supp. at 391. Based on the calculated inflation rate[2] during this period of 3.37%, the appropriate amount of back pay with interest is therefore $106,199.46. The undersigned recommends that plaintiff additionally be permitted to provide evidence of compensatory and punitive damages through any method the Court deems appropriate.

## VI.   Recommendation

For the foregoing reasons, the undersigned recommends:

1) Granting plaintiff's motion for default judgment (Dkt. No. 11);

2) Awarding plaintiff $106,199.46 for her Title VII back pay award.

## VII.   Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendant domain names at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to

---

[2] The undersigned adopts plaintiff's use of the Consumer Price Index data calculated by the U.S. Bureau of Labor Statistics, a federal government agency, for this purpose.

this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

March 31, 2020
Alexandria, Virginia